# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**RICHARD GRELL**,

               Plaintiff,

               v.

**DONALD J. TRUMP,** *et al.*,

               Defendants.

Case No. 17-cv-939 (CRC)

## MEMORANDUM OPINION

As the nation ponders current political controversies, this case evokes one from the past:
the Reagan Administration's covert effort to undermine Nicaragua's Sandinista government in
the 1980s. *Pro se* plaintiff Richard Grell is a U.S. Army veteran who was deployed to Central
America in the 1980s and objects to how the government categorizes the missions in which he
served. Grell insists that he engaged in combat operations in aid of an undeclared war in
Nicaragua, while the military classifies his service as mere training and war games exercises. In
a sprawling, 98-page complaint, Grell brings suit against five government defendants in their
official capacities: President Donald Trump, Secretary of Defense James Mattis, Chairman of
the Joint Chiefs of Staff Joseph Dunford, Speaker of the House Paul Ryan, and Senate Majority
Leader Mitch McConnell (collectively, "defendants"). Grell alleges unspecified constitutional
violations on his own behalf and on behalf of other veterans who served in similar
circumstances. Grell's complaint also vaguely sketches a claim under the Administrative
Procedure Act ("APA"), seeking review of an Army Board for Correction of Military Records
("ABCMR") determination. He requests both monetary damages and equitable relief to remedy

the loss of recognition and benefits that he claims to have suffered as a result of the government's misclassification of his service.

Defendants move to dismiss all claims on either jurisdictional or merits grounds; alternatively, they urge the Court to strike Grell's Amended Complaint. After review of the parties' briefing, the Court concludes that Grell's constitutional claims are barred by the political question doctrine and therefore grants defendants' motion to dismiss them. But the Court will strike the remainder of the Amended Complaint, and permit Grell to re-file a more concise complaint that clarifies any APA claim he wishes to bring against a proper government defendant.

## I. Factual Background

Mr. Grell, a U.S. Army veteran, was stationed in Central America from approximately September 1983 to August 1985. Amended Complaint ("Am. Compl.") at 2. During that period, he was deployed to Honduras for three months in 1984. Id. at 6-7. He was part of an assignment in Panama with a military police company for about three weeks in 1985. Id. at 7. And in the spring of 1985, he was part of a military police special reaction team assigned to guard a residential facility in Panama. Id. at 7-8.

These stints in Honduras and Panama have been classed as "training and war games" exercises rather than "combat zones." Id. at 4, 8, 17-18, 22, 26, 33, 36. Grell objects to this categorization. Id. He believes that his military assignments were not practice or simulation but efforts to overthrow neighboring Nicaragua's Sandinista government, clandestinely ordered by President Ronald Reagan to avoid congressional oversight. Id. at 2, 10, 19, 20, 33, 64. According to Grell, this means that he and his fellow soldiers were in an active war zone, id. at 6-9, 11, as part of efforts that violated the War Powers Resolution. Id.; 50 U.S.C. §§ 1541–1548.

2

Grell contends that the government labeled these "practice" missions to surreptitiously circumvent legislative restrictions on military involvement in Nicaragua. Am. Compl. at 2, 10, 19, 20, 33, 64.

Grell alleges that he and other soldiers who served in Central America from 1979 to 1992 have suffered unspecified constitutional violations. Id. at 2. He states that neither the Army nor any other part of the U.S. government has recognized his role in a "combat mission" or in "support of a combat mission," in spite of his active combat. See id. at 4, 24, 17, 19-20. Grell contends that he and his fellow soldiers have suffered myriad injuries from their inability to claim involvement in combat operations: (1) lack of administrative recognition, including denial of consideration for various military awards and societies; (2) denial of special pay for hostile-fire service; (3) denial of death-classification as "killed in action"; (4) withholding of tax credits; (5) denial of special leave and "rest and recuperation" periods; (6) lost employment opportunities; (7) denial of veterans' discounts and related perks; (8) denial of disability benefits; and (9) denial of more expansive employment and healthcare benefits. Id. at 3-4, 15.

Grell requests numerous forms of relief. Id. at 92-98. Specifically, he asks the Court to issue an order directing the executive and legislative branches to: (1) designate Honduras, Costa Rica, El Salvador, Nicaragua, and Guatemala during the relevant time periods as "combat zone areas," "combat zone tax exclusion areas," "direct support of combat operations areas," "qualified hazardous duty areas," "hostile fire/imminent danger areas," and/or "hardship duty locations"; (2) create and/or issue various medals to Grell and other soldiers; (3) declare that the various incidents in Central America were hostile and, therefore, should have been reported under the War Powers Resolution and the Arms Export Control Act; (4) create an independent bipartisan commission to investigate congressional misconduct; (5) direct the formation of an

independent veterans' commission; (6) classify soldier Jeffry Schwab as "killed in action"; (7) issue various posthumous medals to Mr. Schwab; (8) issue "gold stars" to the Schwab family; (9) determine that Grell's return date from Honduras to Panama was May 11, 1984; and (10) correct military documents to reflect Grell's requests. Id. Grell also asks that this Court assert permanent jurisdiction over all issues raised in the Amended Complaint. Id. at 96.

Grell also seeks monetary damages for himself and other soldiers in the form of: (1) back-payment of federal/state income taxes and interest (Grell personally seeks $296,572.98); (2) unpaid hostile-fire pay and hardship pay (Grell personally seeks $187,255.99); (3) back-payments in compensation for denied leave and "rest and recuperation periods"; (4) back-payment of withheld "special savings account allotments"; and (5) compensation for Service Group Life Insurance payments (Grell personally seeks $2,636.41). Id. at 92-98.

Defendants now move to dismiss Grell's complaint in its entirety. They raise various objections to this Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1). And even assuming the Court has jurisdiction, defendants argue that Grell has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, defendants ask the Court to strike Grell's long, discursive complaint and instruct him to file a new one that conforms to Federal Rule of Civil Procedure 8's requirement that complaints contain a "short and plain" statement of their claims.

## II. Legal Background

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court must "treat the complaint's factual allegations as true . . . and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting Schuler v. United

States, 617 F.2d 605, 608 (D.C. Cir. 1979); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, a court need not accept inferences drawn by a plaintiff that are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

A. Subject Matter Jurisdiction

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" Akinseye v. District of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). When reviewing a jurisdictional challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself of jurisdiction. See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).

B. Failure to State a Claim

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead facts that, if accepted as true, state a plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Courts evaluating a motion to dismiss

must accept as true all of the complaint's factual allegations but need not do so for bare legal conclusions. Id. at 678-79. And where, as here, a *pro se* plaintiff drafted the complaint, courts have an "obligation to construe [his] filings liberally" and must "consider his filings as a whole before dismissing a complaint." Schnitzler v. United States, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)).

### III. Analysis

#### A. Constitutional Claims

Defendants raise two jurisdictional bars—a lack of standing and the political question doctrine—to Grell's constitutional claims. MTD. at 6-12. Because the Court finds that the political question doctrine applies, it need not discuss standing.

The political question doctrine is "essentially a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 217 (1962). The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 840 (D.C. Cir. 2010) (quoting Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986)). To determine whether a case presents a non-justiciable political question, courts examine whether the dispute involves:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker, 369 U.S. at 217.  Only one factor need be implicated to find a political question.

Schneider v. Kissinger, 412 F.3d 190, 194 (D.C. Cir. 2005).

Almost all the Baker factors—but especially the first and second—suggest this case involves a nonjusticiable political question.  As for the first, there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government."  Id.  Specifically: Article I of the Constitution delegates to the legislature, among other things, the power to "provide for the Common Defence," cl. 3, to "declare War," and to "make Rules for the Government and Regulation of the land and naval Forces."  U.S. Const. art. I, § 8.  Article II, meanwhile, makes the president the "Commander in Chief of the Army and Navy of the United States" and gives the president the authority to "make Treaties" with other nations.  Id. art. II, § 2.  Though the Constitution's allocation of foreign policy power to the executive branch is enumerated less explicitly than it is to the legislative branch, the Supreme Court has nevertheless held that the president in effect possesses "'plenary and exclusive power' in the international arena."  Schneider, 412 F.3d at 195 (quoting United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936)).

It is no surprise, then, that "[d]isputes involving foreign relations . . . are 'quintessential sources of political questions.'"  El Shifa, 607 F.3d at 841 (quoting Bancoult v. McNamara, 445 F.3d 427, 433 (D.C. Cir. 2006)); see Haig v. Agee, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").  So too here.  Grell's constitutional claims all turn on decisions surrounding American military operations in Central America in the 1980s.  Grell asks the Court to order the executive and legislative branches to retroactively designate certain countries in which he served as "combat zone areas," issue commendations and back-pay to him and other soldiers, and

7

declare that various skirmishes in Central America were hostile and therefore subject to reporting

under the War Powers Resolution.  See Am. Compl. At 92-98.  These "aspects of the questions

posed by this case are indisputably and completely committed to the political branches of

government," counseling against this Court's jurisdiction.  Smith v. Obama, 217 F. Supp. 3d

283, 300 (D.D.C. 2016), order vacated, appeal dismissed as moot sub nom. Smith v. Trump, 731

F. App'x 8 (D.C. Cir. 2018).

The second Baker factor counsels likewise.  The "factual questions . . . raised by [Grell]'s

claims are not of the type that the Court is well-equipped to resolve."  Id.  To the contrary, "the

particular questions presented in this case 'require judicial inquiry into sensitive military

matters'" that "'[t]he Court lacks the resources and expertise (which are accessible to the

Congress) to resolve[.]"  Id. (quoting Crockett v. Reagan, 558 F. Supp. 893, 898 (D.D.C.

1982), aff'd, 720 F.2d 1355 (D.C. Cir. 1983)).  Crockett is especially instructive here.  In that

case, members of Congress sought a declaratory judgment that President Reagan's clandestine

maneuvers in El Salvador had violated the War Powers Resolution and the Foreign Assistance

Act.  The Court noted that the second Baker factor strongly suggested the case involved a

political question unfit for judicial review.

> The questions as to the nature and extent of the United States' presence in El
> Salvador and whether a report under the [War Powers Resolution] is mandated
> because our forces have been subject to hostile fire or are taking part in the war
> effort are appropriate for congressional, not judicial, investigation and
> determination.  Further, in order to determine the application of the 60-day
> provision [in the WPR requiring termination of further hostilities without
> congressional approval], the Court would be required to decide at exactly what
> point in time U.S. forces had been introduced into hostilities or imminent
> hostilities, and whether that situation continues to exist.  This inquiry would be
> even more inappropriate for the judiciary.

Crockett, 558 F. Supp. at 898.  While not *every* allegation that the executive has shirked its

obligations under the War Powers Resolution would present such difficult factual

determinations, id. at 898-99 (contrasting fact-finding problems in covert Central American conflict with large-scale warfare in Vietnam), Grell's claims plainly do, id. at 899 (emphasizing "subtleties of factfinding in this situation"); accord Sanchez-Espinoza v. Reagan, 568 F. Supp. 596, 600 (D.D.C. 1983), aff'd, 770 F.2d 202 (D.C. Cir. 1985) (invoking political question doctrine, in part because the "activities of CIA operatives in Nicaragua and Honduras are perforce even less judicially discoverable than the level of participation by U.S. military personnel in hostilities in El Salvador").

Crockett and Sanchez-Espinoza concerned precisely the same historical episode at the heart of Grell's greivances. As in those cases, so too here: Grell's claims turn on decisions committed to the political branches and manifestly unfit for judicial resolution. They are therefore barred by the political question doctrine and must be dismissed.

B. APA Claim

The Court must first decide whether Grell has even pled a valid APA claim. Defendants contend he did not. The Amended Complaint is not a model in brevity or clarity, and Grell does not explicitly cite the APA. See generally Am. Compl. It is only in his opposition to the defendants' motion to dismiss that Grell specifically indicates his intent to press an APA claim. See Pl's Opp. at 2-3, 13-14, 49, 61. And in the ordinary case, that delay would prove fatal to the claim. Perkins v. Vance-Cooks, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations [in a motion-to-dismiss opposition]."); Middlebrooks v. Godwin Corp., 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.").

But this is not the ordinary case. Grell is proceeding *pro se*, and historically this court has held self-represented litigants to less rigorous pleadings standards. Richardson, 193 F.3d at

549 (holding that *pro se* plaintiff's motion-to-dismiss opposition should be considered an amendment to original complaint); Anyanwutaku v. Moore, 151 F.3d 1053, 1054, 1059 (D.C. Cir. 1998) (allowing "confusing *pro se* complaint" to proceed in light of less stringent pleading standards). Moreover, despite Grell's failure to explicitly style his claim as one governed by the APA, the Amended Complaint includes many facts relevant to an APA claim, including his disagreement with an Army Board for Correction of Military Record's decision, see Am. Compl. at 12-13, 22-23, 108, 110, 132, 218-19, suggesting Grell wanted to raise an administrative challenge but perhaps lacked the legal wherewithal to do so correctly.

That said, the Court recognizes the difficulty in discerning the particulars of Grell's APA claim, which in effect denies defendants a fair opportunity to respond in its motion to dismiss. So the Court opts for a middle ground: it will strike the amended complaint insofar as it attempted to raise an APA claim, and will grant Grell leave to file an amended complaint clarifying his APA claim(s) within 21 days. See Ciralsky v. C.I.A., 355 F.3d 661, 669 (D.C. Cir. 2004) (approving district court's decision to strike overlong and rambling complaint and grant plaintiff 21 days to file an emended complaint). In crafting this new complaint, Grell should consult Rule 8 of the Federal Rules of Civil Procedure, which calls for "a short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of the claim showing that the pleader is entitled to relief," and a "demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3).

The Court notes, however, that Grell should not include President Trump, House Speaker Ryan, Senate Majority Leader McConnell, or Joint Chiefs of Staff Chairman Dunford as defendants in any APA claim. Under the APA, a plaintiff may file suit "against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703. The only one

of the five named defendants in Grell's Amended Complaint that falls into any of those categories is Secretary of Defense Mattis.  Given that the Secretary of Defense is the chief executive officer of the Department of Defense—which functions as the executive department of the Armed Forces of the United States—and given that Grell's administrative dispute concerns a decision of the Army Board for Correction of Military Records, Secretary Mattis would likely be a proper defendant under § 703.

The other defendants, however, are neither an "agency" nor "the appropriate officer" for the purposes of Grell's potential APA claim.  5 U.S.C. § 703.  The president is not subject to APA-style abuse-of-discretion review, see Franklin v. Massachusetts, 505 U.S. 788, 800-01 (1992), and neither are congressmen like Ryan and McConnell, 5 U.S.C. §§ 551(1)(A), 701(b)(1)(A).  The Joint Chiefs of Staff, for its part, is "an entity within the DOD" that advises the president on military matters, but it is not an agency unto itself.  Hill v. Dep't of Def., 981 F. Supp. 2d 1, 3 (D.D.C. 2013).  Grell's quest to plead a more precise and concise APA claim can start by naming exclusively the proper defendants.

## IV.  Conclusion

Because Grell's constitutional claims turn on inherently political questions, the Court grants defendants' motion to dismiss them.  The Court strikes what remains of Grell's Amended Complaint, but grants Grell leave to file an amended complaint—within 21 days of the issuance of this Memorandum Opinion—that clarifies any APA claim he believes he may have against Secretary Mattis.  Failure to file a new complaint within 21 days of this order may result in complete dismissal of the case.  A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
Date: September 12, 2018                                United States District Judge